USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/26/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

VAN T. DINH,

         Defendant.

------------------------------------X

09 Cr. 327-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On August 25, 2008, Van T. Dinh, ("Dinh" or "Defendant") pleaded guilty to one count unauthorized use of a computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) & (c)(4)(C) and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  For the reasons set forth below, Dinh will be sentenced to 51 months' imprisonment to be followed by 3 years' supervised release.  Dinh will also be required to pay a special assessment of $200 and restitution in the amount of $125,199.07.

**Prior Proceedings**

      On April 3, 2009, Indictment 09 CR 327-01 (RWS) was filed in the Southern District of New York.  Count 1 charges

1

that from December 30, 2008, up to and including February 2009,
in the Southern District of New York and elsewhere, Dinh, after
having been convicted under 18 U.S.C. § 1030(a)(4) on May 5,
2004 in the United States District Court for the District of
Massachusetts, without the knowledge or authorization of a
foreign exchange brokerage company ("Company-1") caused the
unauthorized transmission of programs, information, codes, and
commands to Company-1's computer network and caused foreign
currency transactions to take place in at lease one account
belonging to another customer of Company-1, in violation of 18
U.S.C. §§ 1030(a)(5)(A) & (c)(4)(C).  Count 2 charges that from
December 30, 2008, up to and including February 2009, in the
Southern District of New York and elsewhere, Dinh possessed and
used the name and Company-1 account number of another person to
commit the offense charged in Count 1 of the Indictment, in
violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(4).

On September 29, 2009, Dinh appeared before the
Honorable Frank Maas in the Southern District of New York and
pleaded guilty to Counts 1 and 2.

Dinh's sentencing is currently scheduled for January
27, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.  Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

      (A)   the applicable category of offense committed
           by the applicable category of defendant as
           set forth in the guidelines . . .;

  (5)   any pertinent policy statement . . . [issued
      by the Sentencing Commission];

  (6)   the need to avoid unwarranted sentence
      disparities among defendants with similar
      records who have been found guilty of
      similar conduct; and

  (7)   the need to provide restitution to any victims of
      the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. <u>See</u> <u>Crosby</u>, 397 F.3d at 114-15.

**The Defendant**

      The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Dinh's personal and family history.

**The Offense Conduct**

      The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

The Internet Protocol ("IP") is the primary method by which data is sent from computer to computer over the Internet. Specifically, at any given moment, each computer connected to the Internet has at least one IP address associated with it.  IP addresses are normally in the form of 4 numbers between 1 and 256, separated by periods.  Further, at any given moment, an IP address uniquely distinguishes the computer assigned a particular IP address from all other computers connected to the Internet, which are assigned different IP addresses.

During the course of this investigation, the case agent spoke with several employees of Company-1, the principal place of business of which is located in Manhattan, New York, and more specifically with an officer of Company-1 (the "Company-1 Officer"), who informed the case agent of the following information.

Company-1 operates an online foreign exchange brokerage offering online services to customers.  Company-1 operates its business and provides many of its services to customers by and through a network of computers located at Company-1's offices in Manhattan and elsewhere.  Company-1's

computer network can be accessed from outside the Company, via the Internet, by Company-1 customers using usernames and passwords assigned to them by Company-1 after the customers apply for a customer account with Company-1. Company-1's computer network can also be accessed by Company-1 employees using assigned usernames and passwords. Certain usernames and passwords assigned to Company-1 employees have administrative access (an "Administrator username and password"), which permits the users of those usernames and passwords, inter alia, to access Company-1 customer accounts.

Based on conversations with the Company-1 Officer, the case agent learned that Dinh submitted a signed contract to Company-1 in order to establish a customer account with Company-1 on December 30, 2008, and Company-1 assigned him a username and password. At no time did Company-1 assign Dinh an Administrator username and password. In connection with his account application, Dinh submitted to Company-1 a Pennsylvania Driver's License, with a photograph, showing his address in Phoenixville, PA (the "PA address").

Also during the course of this investigation, the case agent obtained records from Verizon relating to three IP

6

addresses, herein referred to as IP Address-1, IP Address-2, and IP Address-3. The subscriber to whom IP Address-1, IP-Address-2, and IP Address-3 were issued was "Tri V. Dinh" at the PA address.

Based on a review of law enforcement records, the case agent learned that Dinh was convicted on May 5, 2004 in the United States District Court for the District of Massachusetts, for unauthorized use of a computer in violation of 18 U.S.C. § 1030(a)(4) (the "Massachusetts Judgment"). The Massachusetts Judgment lists the PA Address as the residence address for Dinh. Further investigation revealed that a photograph on the PA Driver's License Dinh submitted to Company-1 in connection with his application for a customer account on December 30, 2008 was of the same individual who was convicted in the Massachusetts Judgment.

In April 2008, Dinh provided the PA Address as his residence address to his Probation Officer in connection with his term of supervised release relating to the Massachusetts Judgment. On September 18, 2008, Dinh provided the PA Address as his residence address to an Immigration and Customs Enforcement agent.

Based on the case agent's review of system logs provided by Company-1, he learned the following information:

- On January 14, 2009, the Company-1 network was logged into from IP Address-1, at the PA Address, and an account belonging to another Company-1 customer ("Customer-1") was accessed using an Administrator username and password. During this unauthorized access, foreign currency transactions were executed in Customer-1's account.

- On January 22, 2009, the Company-1 network was logged into from IP Address-2, at the PA Address, and an account belonging to another Company-1 customer ("Customer-2") was accessed using an Administrator username and password. During this unauthorized access, foreign currency transactions were executed in Customer-2's account.

- On January 23, 2009, the Company-1 network was logged into from IP Address-3, at the PA Address, and an account belonging to Customer-2 was accessed using an Administrator username and password. During this unauthorized access, foreign currency transactions were executed in Customer-2's account.

Based on a review of data from records provided by Company-1, the following information was ascertained:

- On January 12, 2009, the account information in the account belonging to Dinh was altered to reflect a non-existent deposit of $55,000.

- On January 14, 2009, the account information in the account belonging to Dinh was altered to reflect a second non-existent deposit of $55,000.

8

- On January 27, 2009, the account information in the account belonging to Customer-2 was altered to reflect a non-existent deposit in the amount of $140,326.75.

According to the Government, after these monetary amounts were artificially increased by Dinh in the various accounts mentioned above, Dinh then executed numerous foreign currency trades in the subject accounts. The Government further noted that Dinh ultimately caused what appeared to be losses as a result of those trades.

According to the Company-1 Officer, other Company-1 employees communicated with Customer-2 by email and telephone in February 2009. Customer-2 confirmed by email and telephone that he had no accessed his account in January 2009.

According to the Company-1 Officer, the damages to Company-1's business as a direct result of the activity of Dinh, including time, effort, and out-of-pocket expenses incurred in the restoration of the system manipulation that had occurred, exceeded $200,000.

**The Relevant Statutory Provisions**

For Count 1, pursuant to 18 U.S.C. §§ 1030(a)(5)(A) & (c)(4)(C), the maximum term of imprisonment is 20 years. For Count 2, a mandatory term of imprisonment of two years must be imposed in addition to any other term of imprisonment, pursuant to 18 U.S.C. § 1028A.

For Count 1, if a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). For Count 2, if a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than one year, pursuant to 18 U.S.C. § 3583(b)(3). Such terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Count 1, Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count, pursuant to 18 U.S.C. § 3561(a)(3). For Count 2, Defendant is not eligible for probation because the instant offense as charged in Count 2 is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 18 U.S.C. § 1028A.

10

The maximum fine that may be imposed is the greatest of $250,000 or gross pecuniary gain or loss from the offense, per count, pursuant to 18 U.S.C. § 3571.  A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Full restitution to the victim is required under 18 U.S.C. §§ 3663A and 3664.

**The Guidelines**

The November 1, 2009 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Regarding Count 1, the guideline for the violation of 18 U.S.C. §§ 1030(a)(5)(A) & (c)(4)(C) is found in § 2B1.1.  The base offense level is 6, pursuant to § 2B1.1(a)(2).  Regarding Count 2, the applicable guideline is § 2B1.6.  Pursuant to § 2B1.6(a), the Guideline sentence is the term of imprisonment

11

required by statute, which under 18 U.S.C. § 1028A is two years to run consecutively to any other imprisonment.

Pursuant to § 2B1.1(b)(1)(G), an increase of 12 levels is warranted because the loss amount was more than $200,000 but less than $400,000.

Pursuant to § 2B1.1(b)(9)(C), an increase of two levels is warranted because the offense involved sophisticated means.

Pursuant to § 2B1.1(b)(15)(A)(ii), an increase of four levels is warranted because Defendant was convicted under 18 U.S.C. § 1030(a)(5)(A).

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12

Accordingly, the applicable offense level is 21.

On October 9, 2003, Dinh was arrested and charged with Unauthorized Use of a Computer, Securities Fraud (two counts), and Wire Fraud (five counts).   On May 4, 2004, Dinh was sentenced in the U.S. District Court for the District of Massachusetts to 13 months' imprisonment and three years' supervised release, and ordered to pay $46,986 in restitution, a $3,000 fine, and an $800 special assessment.   Pursuant to §§ 4A1.1(a) and 4A1.2(e)(2), this conviction warrants two criminal history points.

According to the presentence report prepared in connection with the above-cited offense by the U.S. Probation Office in Boston, Massachusetts between July 7, 2003 and July 11, 2003, in the District of Massachusetts and the Eastern District of Pennsylvania, Dinh accessed an investor's computer system and obtained information regarding that investor's TD Waterhouse account.   Dinh then used that information to execute multiple transactions regarding the purchase and sale of securities in order to personally profit from those transactions.   As a result of Dinh's actions, that investor lost

13

$46,986, which was later reimbursed by TD Waterhouse.

According to the U.S. Probation Office located in Boston, Massachusetts, on April 27, 2005, Dinh was released to Immigration and Customs Enforcement, whereupon that agency instituted deportation proceedings.  On August 16, 2005, he was released from ICE custody and supervision of Defendant was transferred to the Eastern District of Pennsylvania.  On April 6, 2008, Defendant's supervision expired.

According to the U.S. Probation Office located in Reading, Pennsylvania, all monetary sanctions, as noted above, were satisfied in full.  However, that office reported that Defendant's adjustment to supervision was "poor."  Information indicates that although Dinh was "severely forewarned that the probation office would be recommending to the Court, placement at a residential reentry center, as a sanction for his unemployment, there were numerous periods of unemployment." U.S. Probation Officer John M. Sanderson from that office reported that Dinh "was not seriously applying himself to secure employment."

A total of two criminal history points establishes a

14

Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 21 and a Criminal History Category of II, the Count 1 Guidelines range for imprisonment is 41 to 51 months, to be followed by a mandatory two-year consecutive term, pursuant to Count 2 under 18 U.S.C. § 1028A.

For Count 1, the Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a)(2). For Count 2, the Guidelines range for a term of supervised release is one year, pursuant to § 5D1.2(a)(3).

Defendant is not eligible for probation because the instant offense as charged under Count 2 is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $7,500 to $75,000, pursuant to § 5E1.2(c)(1) and (c)(2). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any

15

imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1,990.13 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such an order is authorized under 18 U.S.C. § 3663A.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007)

16

(quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." As described in the PSR, Defendant is an intelligent individual who suffers from a gambling disorder and a sense of detachment from American society due to the difficulties of his upbringing as a Vietnamese immigrant. Defendant also was given early responsibility to help support his family. It appears that these factors contributed to Dinh's pursuit of "easy money," which has led him to criminal activity. The Court notes that, in this case, Dinh has accepted responsibility for his conduct. In light of his personal difficulties, the Court finds that a downward departure from the Guideline sentence for Count 1 is appropriate to impose a sentence "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

17

**The Sentence**

For the instant offense, Dinh will be sentenced to 51 months' imprisonment (27 months for Count 1 followed by 24 months for Count 2) and 3 years' supervised release.

Dinh is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Dinh be supervised by the district of his residence.

As mandatory conditions of his supervised release, Dinh shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the Court's determination that Defendant presents a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

18

(1)     Defendant shall cooperate with officials of Immigration and Customs Enforcement and comply with immigration laws.

(2)     Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

As one victim has suffered injury compensable under

19

the Victim and Witness Protection Act in the amount of $125,199.07, Defendant shall make restitution to the Clerk of the Court, 500 Pear Street, New York, NY 10007, to be forwarded to the following victim:

Capital Markets Services
Empire State Building
350 Fifth Avenue
Suite 6400
New York, NY 10118

Attn: Anna Karpman
Office of the General Counsel

Restitution shall be paid in monthly installments of not less than 25% of Defendant's total gross monthly income to commence during any term of imprisonment. If Defendant is engaged in a BOP non-UNICOR program, Defendant shall pay $25 per quarter toward criminal financial penalties. However, if Defendant participates in the BOP's UNICOR program as a grade 1 through 4, Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545/11. The balance of such restitution is to be paid over the period of supervision to commence upon release from custody.

Defendant shall notify the United States Attorney for the Southern District of New York within 30 days of any change

20

of mailing or residence address that occurs while any portion of the restitution remains unpaid.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for January 27, 2011.

It is so ordered.

New York, NY
January 2⎧, 2011

ROBERT W. SWEET
U.S.D.J.